# Carlisle *v.* The State.

*Prosecution for Obtaining Money by False Pretenses.*

1. *Statement of offense by solicitor, in appeal cases; agreement dispensing with.*—When a criminal prosecution is commenced before a justice of the peace, and removed by appeal into the Circuit Court, the parties may, by consent, dispense with the filing of a statement by the solicitor (Code, § 4729), and substitute for it the affidavit on which the warrant of arrest was issued.

2. *Obtaining money by false pretense; criminal intent.*—To authorize a conviction for the statutory offense of obtaining money or property " by any false pretense or token, and with the intent to injure or defraud " (Code, § 4370), the criminal intent must be proved; but the word *injure*, as used in the statute, means neither more nor less than is implied in the word *defraud*.

From the Circuit Court of Pike.

Tried before the Hon. Jno. P. Hubbard.

This prosecution was commenced before a justice of the

[Carlisle v. The State.]

peace, before whom an affidavit was made by one Mitchell Stringer, to this effect: "that he has probable cause for believing, and does believe, that the offense of obtaining money under false pretenses has been committed in said county by Andrew Carlisle; that said Carlisle, about the 11th or 12th October, 1883, obtained from affiant one dollar in United States silver coin, by delivering a violin to affiant, to be held by him one day, and if said dollar was not paid at the expiration of said time, said violin was to become the property of affiant; and falsely representing to affiant that said violin was his property, when in fact it was the property of Frank Ruffin and others, and said Carlisle had no property therein. Said false representation was made with intent to defraud affiant." On appeal to the Circuit Court, as the bill of exceptions states, "the cause was tried, by consent, on the original papers from the justice;" and said Stringer, the prosecutor, testified to the facts substantially as stated in his affidavit, except that the defendant's promise, at the time he obtained the money by a pledge of the violin, was, "to pay the dollar and twenty cents back that night, if witness would let him have the dollar, and to pay twenty cents each day he failed to pay said amount." He further testified, that the defendant offered him several pieces of money that night, which he refused to receive, because, though he did not count it, he was satisfied that it was less than a dollar. Another witness for the State, who was present on each of these occasions, testified to the same facts, and to the defendant's declaration, when asking for the loan, that the violin belonged to him; "and it was admitted by the defendant," as the bill of exceptions states, "that the violin was not his, and that he told Stringer it was his before getting the money." The defendant introduced one Cotton as a witness, who testified that, "some days after the money was loaned," the defendant asked him for a loan of one dollar and twenty cents to redeem the violin from Stringer, and brought Stringer to him to get the money; "that he pulled out the money ($1.20), and told Stringer he would pay it, but Stringer appeared not to want to take it, and got into a conversation with defendant and went away, saying that he would get the fiddle; that he (witness) then gave the money ($1.20) to the defendant, and never saw Stringer again until to-day." The defendant himself made a statement to the jury, in which he said, among other things, that the money which he offered to Stringer, on the night of the day on which he obtained the loan, was $1.10; and that on the day Cotton let him have $1.20, "he waited all day for Stringer to come back, so that he could get the fiddle, and he never came back any more that day." This being all the evidence, the defendant asked the court, in writing, to

charge the jury, among other things, as follows : " 2. The in-
tent to defraud Stringer is a necessary ingredient of the offense;
and if the jury believe, from the evidence, that the defendant
did not intend to defraud said Stringer, they must acquit him,
although the evidence further shows that he made a false repre-
sentation as to the ownership of the violin." The court refused
this charge, and the defendant excepted to its refusal.

N. W. Griffin, for appellant.

T. N. McClellan, Attorney-General, for the State.

STONE, C. J.—This prosecution was commenced, and the
defendant convicted, before a justice of the peace. He appealed
to the Circuit Court, and was tried *de novo*. No statement
was filed by the solicitor, but the record informs us the case
was tried, by consent, on the affidavit for warrant of arrest.
The affidavit is very full, and sets forth every ingredient of
this statutory crime. We know no rule of law, which will
deny to parties the power to dispense with the statement the
solicitor is required to file in cases of appeal, and to substitute,
by consent, the affidavit for the warrant of arrest, when such
affidavit is sufficiently specific in its averments.—Code of 1876,
§ 4729.

Intent to injure or defraud is made an ingredient of the
offense, of which the defendant was convicted. Without this
intent, there is no guilt. Intent is rarely shown by direct
proof, but is inferred from facts in evidence. Still, to authorize
a conviction, the jury must be affirmatively convinced such in-
tent existed; convinced by that measure of proof required in
criminal cases. Our statute employs, disjunctively, the two
words, " injure or defraud." Either intent is sufficient to con-
stitute the corrupt motive, if the words are employed in a
different sense. Are they so employed ? The only injury
that can be inflicted, " by any false pretense or token," by
which one person " obtains from another any money or other
personal property," is the deception which imposes on the con-
fidence of that other. This is a fraud ; and we can not think
the legislature, in employing the word *injure*, intended to ex-
press, or, considering the connection, could express, more or
less than is implied in the word *defraud*. And this interpre-
tation is fortified by the fact, that in prescribing a form of
indictment for this offense, the same legislature which declared
the ingredients of the crime, explained the phrase " with in-
tent to defraud," and omitted the word injure.—Form 48,
Code of 1876, p. 996 ; *Mack v. The State*, 63 Ala. 138 ; *Wood-*

[Cary v. The State.]

*bury v. The State*, 69 Ala. 242. The second charge asked by defendant should have been given. ·

Reversed and remanded. The defendant to remain in custody, until discharged by due course of law.