# White v. The State.

*Indictment for Attempting to Obtain Money by False Pretenses.*

1. *Pendency of another indictment.*—The pendency of another indictment in the same court, for the same offense, is not good matter for a plea in abatement, though there can be but one acquittal or conviction in a trial on the merits for the offense.

2. *Sufficiency of indictment ; averment of intent to injure or defraud.* In an indictment for obtaining (or attempting to obtain) money by false pretenses (Code, §§ 3811, 4383), an averment that the act was done "with the intent to defraud," or to "cheat and defraud," is each sufficient.

3. *Right to continuance for absent witnesses.*—While an application for a continuance in a criminal case, on account of absent witnesses, is generally addressed to the discretion of the trial court, this court will not say that there may not be such a gross and palpable abuse of this discretion as to authorize a reversal of the judgment on account of it ; yet such an extreme case is not shown, where the defendant, being in court on another charge when the case is called, but not having been arrested under the second indictment, asks to have the case postponed until he can obtain the attendance of absent witnesses, but declines to state their names, or what he expects to prove by them.

4. *Attorney as witness ; privileged communications.*—On grounds of public policy, an attorney at law can not be required to disclose, as a witness, any confidential communications made to him by his client ; but he may be required to state the fact of his employment in a particular case or transaction, or any matter disclosed to him by his client for the purpose of communication to the adverse party.

5. *Checks for baggage, as evidence of liability of railroad company ; variance ; authority of attorney to make demand.*—Checks for baggage delivered to a railroad company for transportation, in the possession of the owner, tend to prove that the baggage has never been received or delivered ; a demand on the railroad company by his attorney, based on the checks, is within the scope of his authority, and binding on the client ; and a variance in the name of the place to which the baggage

[White v. The State.]

was checked, contained in the attorney's letter or demand, does not render it inadmissible as evidence.

6. *Acts of wife, as evidence against husband.*—The defendant being indicted for attempting to obtain money from a railroad company, as compensation for the loss of two trunks, for which he had baggage checks, and which he claimed were never delivered to him ; it is competent for the prosecution to prove that his wife, with whom he was travelling on the railroad, was present when the trunks were delivered on the platform at their destination, that they were opened by her, and articles of clothing taken out, which were afterwards worn by her under circumstances which might justify the inference that her possession was known to him.

FROM the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

The indictment in this case contained six counts, to each of which a demurrer was interposed, "because said count does not allege that the alleged attempt to obtain money was made with intent to injure or defraud, or that said pretenses were made with any intent to injure or defraud." The court overruled the demurrer, as to the first, fifth, and sixth counts, which were as follows :    (1.)    "That William F. White did falsely pretend to the Louisville & Nashville Railroad Company, a corporation duly incorporated under the constitution and laws of Kentucky, with the intent to defraud, that two of his trunks, for which he held the checks of said company, and which he had shipped by said company over its road, from Mobile, Alabama, to Bluff Springs, Florida, had not been delivered to him by said company, and, by means of such false pretenses, attempted to obtain $200 from said company."    (5.)    That said White, "unlawfully, knowingly and designedly, did pretend to the Louisville & Nashville Railroad Company, a corporation," &c., that said trunks, for which he held the checks of the company, "had not been delivered to him, or come again into his possession, but were withheld from him by said company ; by means of which said false pretenses, he did then and there, unlawfully, knowingly and designedly, attempt and endeavor to obtain from said company certain moneys, to-wit, $200, the value of said trunks, with the intent then and there to cheat and defraud the said · company of the same ; whereas, in truth and in fact, he had received the said trunks into his possession at Bluff Springs, Florida, as he well knew."    (6.)    That said defendant, unlawfully, knowingly and designedly, did pretend to said railroad company "that he had never received two trunks, for which he had obtained and then held the checks of said company, and which he had put in the pos-

[White v. The State.]

session of said company at Mobile, Alabama, to be transported for him to Bluff Springs, Florida; presenting the said checks to said company, as evidence of the fact that said trunks had never been received by, or delivered to him; by means of which said false pretenses, said White did then and there, unlawfully, knowingly and designedly, attempt to obtain from said company certain moneys, to-wit, $200, of the money of said company, with the intent then and there to cheat and defraud said company of the same; whereas" he had already received the trunks, &c.

Before demurring to the indictment, the defendant pleaded in abatement to each count, alleging that, "at the time of the commencement of this prosecution, there was pending in said City Court a former indictment against defendant for the same offense in said count complained of." On motion, the court struck out each of these pleas, as frivolous; to which action the defendant excepted. The defendant having pleaded not guilty, and the State having announced ready for trial, the defendant stated to the court, as the bill of exceptions recites, "that he was not ready for trial; that he had not been arrested upon the indictment in this case until the cause was that day called for trial, when he was present in court under bond to answer another indictment then pending; that he had, for that reason, had no opportunity to obtain process of subpœna for the attendance of his witnesses; that they lived at such a distance that it would be impossible for him to obtain their presence at the trial, if the case should now go on; and that he objected to being put upon his trial for the offense without an opportunity to procure the attendance of his witnesses." In support of this objection, he filed an affidavit, stating that "there are two or more witnesses, whose testimony he is advised and believes is material to his defense in this case, and who are absent without any fault of his, and that he believes he can procure their presence at the next term of the court." The court refused to continue the case, or to delay the trial, on this showing, unless the defendant would give the names of his witnesses, and state what he expected to prove by them; which he declined to do, and duly excepted to the action of the court in proceeding with the trial.

On the trial, as the bill of exceptions further shows, the prosecution proved that defendant and his wife travelled over said railroad on the 19th May, 1887, from Mobile, Ala., to Bluff Springs, Fla., where they resided; that they had two trunks

with them, for which baggage checks were given, and that these trunks were delivered on the railroad platform at Bluff Springs. Miss Maggie Byars, a witness for the State, who travelled with the defendant and his wife on the occasion referred to, and had assisted in packing their trunks, testified that she saw the trunks on the platform at Bluff Springs, saw Mrs. White take a hat and some other articles out of one of them, and afterwards saw her wearing one of the dresses which had been packed in the trunk; but she further stated that the defendant was not present when she saw the trunks on the platform, having gone off for some purpose. The defendant objected and excepted to the admission of this evidence, because he was not present at the time. W. T. Lewis, another witness for the State, testified that the defendant and his wife, on the day of their arrival at Bluff Springs, came out to his house, two or three miles distant, bringing two trunks with them; that both of the trunks had ropes around them, and strap checks on them; that he saw the defendant with the checks in his hand, and heard him say, holding them up, *"Couldn't I give the railroad hell, if I had a mind to?"* George Muntz, assistant baggage-master of the railroad company, who testified to the railroad's receipt of the trunks at Mobile and the delivery of the checks for them to the defendant, further testified that the defendant came to him, about six weeks afterwards, and said: "We never received that baggage, and I wish you would check it up, and find out as quick as you can what became of it." Gaylord B. Clark, attorney for the Louisville & Nashville Railroad Company, testified on the part of the prosecution to his receipt of a letter, which purported to be signed by G. L. & H. T. Smith, as attorneys for the defendant, and in which they made a demand for compensation on account of the alleged loss of the defendant's trunks. The defendant objected to each part of this evidence, but without stating any particular ground of objection, and excepted to the overruling of his objections. The State then introduced Harry T. Smith as a witness, and asked him, "Were you the attorney of the defendant last July?" The witness declining to answer the question, "the court instructed him that he must testify as to his employment by White, and as to all he did as such attorney in writing the letter, but not as to what conversation took place between himself and the defendant;" and the witness then testified to the writing of the letter by him, in the name of his firm, as attorneys for the defendant,

[White v. The State.]

demanding compensation for the loss of two trunks, therein alleged to have been checked from Mobile to *Blount* Springs, Alabama. The defendant excepted to the ruling of the court requiring said Smith to testify, and to the admission of his testimony as given. The loss of the original letter was proved, after having been filed with the other papers in the case, and a letter-press copy was admitted as evidence. It is unnecessary to set out its contents.

GREGORY L. & H. T. SMITH, for appellant.—(1.) The defendant was forced to trial without an opportunity to procure the attendance of his witnesses, in palpable violation of his constitutional rights. He did not ask a continuance of the case, but only a delay or postponement of the trial until` he could see and procure the attendance of his witnesses. He had not been arrested when the case was called for trial, and could have had no knowledge of the indictment, since its disclosure before the defendant has been arrested is prohibited. The court had no right to require that he should give the names of his witnesses, or state what he expected to prove by them, when he had had no opportunity to see and converse with them; for this would place him at great disadvantage, and enable the prosecution to shape its course accordingly. The constitutional provision confers a valuable right, and the court can have no discretionary power to take away or impair that right. If a statute should authorize or require the court to do what was actually done in this case, its unconstitutionality could not be doubted. (2.) H. T. Smith should not have been required to testify as a witness, and his testimony ought not to have been received.—*Blount v. Strong*, 60 Ala. 572; U. S. Digest, vol. 1, p. 383, §§ 1028-30. (3.) The letter was not competent evidence.—*O'Neal v. State*, 30 Ala. 8; *Wailes v. Neal*, 65 Ala. 59. When a client places his claim or demand in the hands of an attorney, he is not presumed to know the legal steps they may see proper to take in its prosecution; and he is not criminally responsible for the acts of his attorney, unless they were expressly authorized by him.—2 Str. 885; 1 Salk. 289; 8 Texas, 6; 4 Leigh, 664. (4.) The acts of the defendant's wife, not in his presence, were not competent as evidence against him.—*Seibert v. State*, 40 Ala. 60; *Nall v. State*, 34 Ala. 234; *Patterson v. State*, 21 Ala. 571.

THOS. N. MCCLELLAN, Attorney-General, *contra*, cited *Carlisle v. State*, 76 Ala. 75; *M. & M. Railway Co. v. Yeates*, 67 Ala. 164.

[White v. The State.]

SOMERVILLE, J.—1. The several pleas in abatement, setting up the fact of the pendency of another indictment against the defendant for the same offense, at the time of the commencement of the present prosecution, presented no sufficient defense to the present indictment by way of abatement, or otherwise. "The pendency of an indictment is no ground for a plea in abatement to another indictment, in the same court, for the same cause."—Wharton's Cr. Pl. & Pr., § 431; Code, 1886, §§ 4390–4394. But an acquittal or conviction, under either indictment, would be a good plea in bar to the other indictment, in a trial on the merits. 2 Greenl. Ev. (14th Ed.), § 26, note (a); *Dutton v. State,* 5 Ind. 533; *Com. v. Drew,* 3 Cush. 279. The trial court correctly sustained the motion to strike these pleas from the file as frivolous.

2. The 'demurrer to the indictment was properly overruled. The statute allows the intent to be alleged in the same count in the alternative—"to injure or defraud." Crim. Code, 1886, §§ 3811, 4383. The averment of an intent to defraud, alone, was clearly sufficient.—*Carlisle v. State,* 76 Ala. 75; Crim. Code, 1886. Form 47, p. 272.

3. It is earnestly insisted, that the defendant was precipitated into the trial of this cause, immediately after being arrested, without opportunity to prepare for his defense, or to summon his witnesses; and that the action of the court was in violation of a constitutional right of the defendant, derived from section 7 of the Declaration of Rights, providing that, in all criminal prosecutions, the accused has a right "to have compulsory process for obtaining witnesses in his favor."—Const. 1875, Art. I, sec. 7.

The established rule in this State is, that the grant or refusal of a continuance rests in the sound discretion of the trial court, and is not revisable on error.—1 Brick. Dig., 774, §§ 2, 3; 1 Brick. Dig. 404, § 1. Whether there might, in a possible case, exist such a gross and palpable abuse of this discretion as to authorize a reversal, we do not decide. We discover nothing to except the present case from the general rule above stated. The court had a clear right to put the accused to a showing, with the view of testing the merits of the application, and thus enlightening the exercise of the judicial discretion. The refusal of the accused to state the names of his witnesses, and what he expected to prove by them, or else to show good reasons for such refusal, when

he was required to do so by the court, certainly justified the action of the court in refusing to continue the cause.

4.  While the law protects certain confidential communications professionally disclosed between an attorney at law and his client, on grounds of public policy, there are some transactions between them as to which the attorney may be compelled to testify without violation of this rule. He may be compelled to state the fact of his employment—*i. e.*, that he is or was the authorized attorney of the client as to a certain transaction (*M. & M. Railway v. Yeates*, 67 Ala. 164); and to testify as to any matter disclosed to him by the client, which was manifestly not intended to be private or confidential, but was intended to be communicated to the adverse party.—1 Greenl. Ev. (14th Ed.), §§ 244–245. There are numerous other exceptions; such as proving the identity or handwriting of his client, the payment of moneys to him, the execution of papers by him, which the attorney attested as the subscribing witness, and like cases.

The trial court did not, in our opinion, go further than legally authorized in its examination of the witness, Harry T. Smith, who was the attorney of the accused, nor require him to make any disclosure in the present case not warranted by law. He was only required to state facts tending to prove his employment by the accused to demand of the Louisville & Nashville Railroad Company compensation for the trunks alleged to have been lost by the negligence of the company, and the delivery to the attorney of the baggage checks as evidence of the company's liability.

5.  These baggage checks, if genuine, might be *prima facie* evidence of the fact that the passenger's baggage had been delivered to the railroad for transportation, and, taken in connection with the passenger's ticket, or other corroborating evidence, would impose an obligation upon the company to carry the baggage through to the station to which it was checked. And the possession of the checks by the claimant would tend to prove that the baggage had not yet been delivered to him.—3 Wood's Railway Law, p. 1521–1522, § 403. The fact was undisputed on the trial, that the two trunks in question had been delivered to the railroad, to be transported to Bluff Springs, Florida, and the checks were given the defendant as evidence of this fact. A claim upon the company for failure to deliver these trunks, necessarily had relation to this contract to deliver at this particular destination. The mistake made by the defendant's

[White v. The State.]

attorney, in his letter to the railroad authorities, in which he spoke of the trunks as checked to *Blount Springs, Alabama*, does not constitute a variance between the false pretense charged and that proved. It is no where proved that this letter correctly recites the representation authorized by the accused to be made through the agency of his attorney. The jury was authorized to infer, as they did, that the false pretense attempted to be practiced upon the railroad company had reference to this obligation imposed by the baggage checks themselves, which was one to deliver, not at Blount Springs, Alabama, but at Bluff Springs, Florida. The attorney, having been employed to assert a claim against the railroad company based on these checks, as the evidence tends to prove, possessed the incidental authority to do everything necessary to the prosecution of such a demand by suit or otherwise, and within the scope of his authority his action was that of his client.

6. The evidence showing that the wife of the accused was present, although he himself was not, when the trunks were delivered on the platform at Bluff Springs station, Florida, was relevant, in connection with the fact that she was shown to have taken clothing from the trunk, and to have worn some of it afterwards, under circumstances which might well have justified the inference that her possession of this clothing at that time was known to the accused. He had traveled with her on the train, and the evidence tends to show that he was in her company when the trunks were hauled from the station, to the house of the witness Lewis. These circumstances not only tended to show the proper delivery of the trunks, but to establish the defendant's knowledge of the fact, which was pertinent to the issues of the present case. The possession of the trunk keys, moreover, by the wife, tended to prove her authority, as agent of the husband, to take custody of the baggage, and have access to it.

Under these principles, the rulings of the court on the evidence were free from error. No exceptions are otherwise taken, so far as appears from the record.

Affirmed.